**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for NYC Constructors Inc., et al.*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Arthur Goldstein, Esq.
Rocco Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re:                                                     :

                                                           :        Chapter 11

NYC Constructors Inc., et al.,[1]                          :

                                                           :        Case No.: 16-10069 (SCC)

                        Debtors.                           :

-------------------------------------------------------- x

## DECLARATION OF BARRY KING (I) IN SUPPORT OF DEBTORS' FIRST DAY MOTIONS AND (II) PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

I, Barry King, declare, pursuant to section 1746 of title 28 of the United States Code, that:

1.      I am the President of NYC Constructors Inc. ("NYC Constructors") a corporation organized under the laws of the State of New York and one of the above-captioned debtors. NYC Constructors and its wholly-owned subsidiary MRP, L.L.C. ("MRP" and together with NYC Constructors, the "Debtors" or the "Company"), a New Jersey limited liability company, intend to file voluntary chapter 11 petitions with the Clerk of this court on or about January 13, 2016 (the "Petition Date").

2.      I have served as NYC Constructors' president since July 2013. I am familiar with the Debtors' day to day operations, business, and financial affairs, and books and records. I have been involved in the construction industry for over twenty (20) years. I am above eighteen years of age and I am competent to testify.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are NYC Constructors Inc. (7618) and MRP, L.L.C. (0498).

3.      I submit this declaration (this "Declaration") in accordance with Rule 1007-2 of the Local Rules of this court (the "Local Bankruptcy Rules") to assist this court (the "Court") and parties in interest in understanding the circumstances that compelled the commencement of the chapter 11 cases, and in support of: (a) the Debtors' petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and (b) for emergency relief that the Debtors have requested from the Court pursuant to the motions and applications described herein (collectively, the "First Day Pleadings").

4.      Among other things, the First Day Pleadings are designed to meet the Debtors' goals of: (i) continuing their operations in chapter 11 with as little disruption and loss of productivity and value as possible; (ii) maintaining the confidence and support of their customers, employees, vendors, subcontractors, materialmen, and service providers; and (iii) establishing procedures for the smooth and efficient administration of these chapter 11 cases.  I have reviewed the First Day Pleadings and it is my belief that the relief sought therein is necessary to: (a) avoid immediate and irreparable harm to, and ensure the uninterrupted operation of the Debtors' businesses, and (b) maximize and preserve the value of the Debtors' chapter 11 estates.

5.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' management team and the Debtors' advisors, including Getzler Henrich, and William Henrich as the Debtors' chief restructuring officer ("CRO"), and my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration.  I am authorized to submit this Declaration on behalf of the Debtors and have shared a copy of this Declaration to the Debtors' CRO to elicit comments prior to its filing with the Court.

6.      Parts I through III of this Declaration provide an overview of the Debtors' businesses, capital structure and circumstances giving rise to the commencement of these chapter 11 cases.  Part IV summarizes the relief requested in each of the First Day Pleadings.  Part V sets forth the information requested by Local Bankruptcy Rule 1007-2

## I.   THE DEBTORS' BUSINESS

### A. NYCC's Acquistion of Assets of DCM Erectors, Inc.

7.      In or about July 2014, NYC Constructors purchased certain assets of the company known as DCM Erectors Inc. ("DCM").  In addition, NYC Constructors purchased all of the membership interests in MRP, then a wholly-owned subsidiary of DCM.  I indirectly own and control 100% of the equity interests in NYC Constructors.

8.      NYC Constructors issued various unsecured promissory notes payable to entities owned and/or controlled by Larry Davis ("Davis"), the owner of DCM and MRP, in connection with the purchase.  The assets purchased by NYC Constructors consisted primarily of various equipment and inventory (steel).  DCM was a well-known steel erector which performed all of the structural steel installation at the new World Trade Center Tower One.  In 2013, DCM and Davis, were indicted and accused of improperly affiliating with a minority owned contractor in order to obtain the steel construction work at the World Trade Center.  As a result of the indictment, DCM became unable to contract with the Port Authority or obtain other similar construction work, leading to the asset acquisition by NYC Constructors.[2]  As noted above, Davis' entities are creditors of the Debtors, but otherwise Davis is not an employee of the Debtors, and does not own any direct, indirect, or beneficial interest in the Debtors.

---

[2] The Debtors understand that DCM and Davis are vigorously defending these charges and that the matter may be tried in the Southern District of New York sometime later this year.

### B. Overview of the Debtors' Business Operations

9.     NYC Constructors is engaged in the erection of structural steel at large construction projects in New York City.    Presently, NYC Constructors is active in several construction projects including the erection of the steel at Tower 3 of the World Trade Center, steel installation at the Museum of Modern Art and Rockefeller University in New York City. NYC Constructors' wholly-owned subsidiary, MRP, operates a steel fabrication business from a leased facility in New Jersey.    MRP performs steel fabrication work, not only for NYC Constructors, but other companies as well.

10.    The Debtors currently employ a total of approximately 310 employees (most of which are union represented iron workers).    NYC Constructors has approximately 253 employees and MRP has approximately 57 employees.    NYC Constructors maintains an office at 110 East 42nd Street, Suite 502, New York, New York.    MRP maintains an office and steel fabrication facility at 1640 New Market Avenue, South Plainfield, NJ 07080.    Both NYC Constructors and MRP in the ordinary course of their businesses outsource some of their back office work, such as accounting and engineering services to a non-debtor affiliate located in Toronto which is owned by B. King Construction Management Inc.    I am the sole owner of B. King Construction Management Inc.    In the ordinary course of business, NYC Constructors pays, on a bi-weekly basis, to its non-debtor affiliate amounts necessary to cover its costs, including payroll.

11.    As further discussed below, the Debtors commenced these chapter 11 cases to maximize value and ultimately effectuate a going concern sale of substantially all of their assets to affiliates of Banker Steel Co., L.L.C. ("Banker Steel") or any other bidder(s) submitting higher and better offers pursuant to a Court-approved bidding and auction process.

## II. PRE-PETITION CAPITAL STRUCTURE AND INDEBTEDNESS

12.    As noted, the Debtors are privately held entities. NYC Constructors owns 100% of the membership interest in MRP. I, through my wholly-owned company, B King Construction Management Inc., own all of the stock in NYC Constructors. As of the Petition Date, Banker Steel was owed approximately $2,000,000 plus accrued interest, which claims are secured by a first priority security interest in substantially all of the assets of the Debtors under a Promissory Note and Security Agreement. The Debtors do not believe they have any other secured creditors as of the Petition Date. In addition, as of the Petition Date, the Debtors owe approximately $3,000,000 to various creditors such as trade vendors, union pension and welfare funds, subcontractors, materialmen and others. As noted above, the Debtors owe several million dollars to entities affiliated with Davis stemming from promissory notes executed in connection with NYC Constructors' acquisition of certain of DCM's assets as well as loans advanced to cover operating expenses.

## III. EVENTS LEADING TO THE CHAPTER 11 CASES

### A. Pre-Petition Negotiations

13.    Since acquiring certain assets of DCM, the Debtors have had a difficult time funding their operations. The Debtors have been unable to obtain surety bonds and financing which has hampered their ability to secure additional steel erection jobs in the City of New York. Since the summer of 2015, the Debtors' management, including myself, have been in negotiations with Banker Steel with respect to a transaction pursuant to which Banker Steel would acquire substantially all of the assets of NYC Constructors and MRP. Initially, it was contemplated that the sale would be accomplished outside of the chapter 11 process. However, as negotiations progressed, it became apparent that, due to a variety of factors (including ever increasing liquidity problems), a sale transaction that maximized the going concern value of the

Debtors' assets would best be consummated through a section 363 sale under the aegis of the Court.

14.     Given their liquidity difficulties, and to assist the Debtors' management both in negotiating the sale transaction, navigating the chapter 11 process, and to ensure that the sale process is fair and the assets properly marketed, in or about October 2015, the Debtors retained Getzler Henrich as restructuring advisors and William Henrich of Getzler Henrich, as CRO. I understand Mr. Henrich has vast experience in advising and guiding troubled businesses through in and out of court restructurings.

15.     On or about October 2014, NYC Constructors entered into a contract with Tishman Construction (as construction manager on behalf of Silverstein Properties, as owner) to perform structural steel erection and metal deck/shear stud installation at the World Trade Center 3 Tower (the "WTC3 Project") under a fixed priced contract (the "Trade Agreement"). During the course of performing its work on this project, it became evident to NYC Constructors, due to the complexity of the project and other factors, that it would be impossible to complete the WTC3 Project for the fixed price contained in the contract, potentially requiring millions of dollars of additional funding which was unavailable to NYC Constructors. This, in turn, created funding difficulties for NYC Constructors, which caused it to be in violation of its obligations under the Trade Agreement and rendered it unable to complete the project within the required time frame and in accordance with the terms of the contract. As a result of NYC Constructors' inability to perform its obligations under the Trade Agreement, in December 2015, Tishman Construction advised NYC Constructors that it was going to cease funding for the project unless NYC Constructors met certain conditions – conditions that NYC Constructors was unable to satisfy given its financial condition. Given these circumstances, NYC Constructors entered into negotiations with Tishman to attempt to restructure the contract, but it became clear that a restructuring of the contract was not viable given NYC Constructors' financial situation –

leaving NYC Constructors with the prospect of losing all investment in the WTC3 project, and leaving it open to millions of dollars of unpaid claims from WTC3 project vendors and other parties, not to mention potentially significant damages to Tishman and Silverstein for failure to perform the Trade Agreement.

16.    During the course of such discussions, NYC Constructors advised Tishman and Silverstein that they were separately in asset purchase negotiations with Banker Steel. Thereafter, extensive meetings among NYC Constructors (through myself and the CRO), Tishman, Silverstein, and Banker Steel took place, which resulted in (i) the Debtors' contract with Tishman being terminated, (ii) Banker Steel, as contractor, and Tishman, as construction manager, entering into a new contract for the completion of the steel work at the WTC3 Project, and (iii) Banker Steel hiring NYC Constructors as its primary subcontractor to perform the steel erection work at the WTC3 Project. In connection with these arrangements, Tishman and Banker (i) provided funding for millions of dollars of potential trust fund and mechanic liens claims, (ii) NYC Constructors was released of millions of dollars of additional potential claims relating to its breach of the Trade Agreement, and (iii) NYC Constructors' workforce and vendor relationships were preserved. The transaction also preserved the going concern value of the Debtors' assets and facilitated the completion of negotiations with Banker Steel with respect to the purchase of substantially all of the Debtors' assets pursuant to a Section 363 sale to be approved by this Court. Overall, the Debtors believe that, upon closing of the proposed sale transaction, it will have sufficient proceeds available to make a meaningful dividend to general unsecured creditors (with the prospect of additional consideration being obtained in the event of a successful overbid for their assets).

**B.  Overview of Proposed Stalking Horse Asset Purchase Agreement**

17.    On January 14, 2016, the Debtors and Banker Steel executed a stalking horse asset purchase agreement ("APA") for the sale of substantially all of their assets. The total

purchase price under the APA, which consists of a combination of cash and the assumption of certain trade debt, union fringe benefit contributions, aggregates to approximately $7.2 million. The assets consist primarily of construction/fabrication equipment, inventory, a subcontract with Banker Steel for the WTC3 Project, accounts receivable, intellectual property rights, and a contract to perform the steel installation for a new hospital facility adjacent to the FDR Drive owned by Rockefeller University, all as more fully detailed in the APA.[3]  The APA is subject to higher and better bids, and, ultimately, the approval of the Court.  The Debtors expect to continue their current operations in the ordinary course pending the outcome of their sale process. The Debtors have commenced these cases to sell their business as a going concern.

## IV. SUMMARY OF FIRST DAY PLEADINGS

### A. Motion of the Debtors for the Sale of Substantially All of Their Assets And to Approve Bidding Procedures In Connection With Such Sale

18.    As set forth above, the Debtors have been in negotiations with Banker Steel since July with respect to the sale transaction.  The Debtors prepared some internal marketing materials and reached out to other potential purchasers.  However, the pool of potential purchasers is quite limited as very few companies have the expertise to perform high level steel fabrication and erection work in the New York City market.  Non-union steel erector companies outside of New York generally do not get involved in large scale union steel work. The Debtors' ability to continue as a going concern is questionable absent either an infusion of a substantial amount of cash or a sale of substantially all of the assets to a financially sound company.  As such, it is imperative that the Court streamline the sale process so that the Debtors can continue to perform all of their ongoing construction projects, including the WTC3 Project and the Rockefeller University project which is slated to commence over the next thirty (30) to sixty (60) days.

---

[3] As is customary, the APA contains a schedule listing executory contracts to be assumed in a detailed listing of all the assets to be acquired.

19.    Through *Debtors' Motion for Entry of (i) an Order (a) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Certain Assets (b) Approving Procedures for Assumption and Assignment of Executory Contracts, (c) Approving the Form and Manner of Notice, and (d) Scheduling an Auction and a Sale Hearing, and (ii) an Order Authorizing and Approving the Sale of Certain Assets* (the "Sale Motion"), filed contemporaneously herewith, the Debtors are seeking to sell substantially all of their assets to Banker Steel affiliates, subject to higher and better offers.  The Banker Steel APA will be subject to higher or otherwise better bids at an auction to be held between the date of these chapter 11 filings and the hearing on the Sale Motion.  Prior to the ultimate Sale hearing, the Debtors will request at the First Day Hearing that the Court schedule a hearing to consider bidding procedures, among other things, within 20 days of the Petition Date, in order to allow the Debtors' sale process to move forward.

20.    Through Getzler Henrich, the Debtors will actively market the assets and cooperate in all respects with any party that expresses a serious interest in submitting a higher and better offer for the assets, subject to reasonable business considerations, including, without limitation, credit worthiness and whether the prospective buyer has experience in the steel fabrication and erection business.

## B.  Debtors' Motion for Interim and Final Financing on a Secured and Superpriority Basis

21.    It is essential that the Debtors have immediate access to monies to fund its continued business operations.  The Debtors are facing an immediate liquidity crisis.  Due to the nature of the business and the lack of substantial accounts receivable, the Debtors are unable to borrow money from traditional lenders.  The Debtors have determined that actively seeking DIP financing from a third party lender would therefore be futile.

22.    As such, in order for the Debtors to continue as going concerns and to avoid any disruption at any of the Debtors' ongoing projects, the Debtors have negotiated with Banker Steel for Banker Steel to advance monies to the Debtors pursuant to a budget to finance operations pending the consummation of the sale transaction.

23.    Without the availability of such DIP financing, the Debtors will not have the funds necessary to preserve their assets, pay employees, meet payroll tax obligations, purchase inventory, and make substantial pension and welfare contributions to various union benefit plans. Accordingly, without immediate access to DIP financing, pending the closing of the sale transaction, the Debtors could suffer substantial and irreparable harm.

24.    By contrast, once the DIP financing is approved, the Debtors will be able to continue their business operations during the interim period between the chapter 11 filings and the consummation of a going concern sale, which should allow the Debtors to maximize the value of their assets for the benefit of all stakeholders. Based upon the purchase price set forth in the APA and the anticipated amount of unsecured debts remaining after the sale, it is expected that unsecured creditors will obtain a recovery.

25.    In addition to requesting a hearing date for approval of bidding procedures, stalking horse protections for Banker Steel and seeking approval of Interim DIP Financing at the first-day hearing, the Debtors intend to seek relief from the Court at the first-day hearing in connection with each of the motions described below:

| Title | Purpose of Motion |
|---|---|
| Motion to Authorize Joint Administration of Debtors' Chapter 11 Cases | For administrative convenience so that docket entries for both cases are entered on one docket. |
| Motion for an Order Athorizing Debtors to (i) Continue Use of Existing Cash Management System, and (ii) Maintain Existing Bank Accounts and Business Forms | To facilitate uninterrupted operation of the business. |
| Motion to Extend Time to File Debtors' Schedule of Assets and Liabilities and Statement of Financial Affairs | Debtors request a 30-day extension to file all schedules and statement of financial affairs. |
| Motion for Interim and Final Orders Authorizing (i) Payment of Wages, Compensation and Employee Benefits and (ii) Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations | Authorization to pay prepetition wages and related employee benefits in order to maintain key employees and preserve employee morale. |
| Motion for Order (i) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (ii) Deeming Utilities Adequately Assured of Future Payment, and (iii) Establishing Procedures for Determining Adequate Assurance of Payment | Approval of adequate assurance of payment to utilities, and approval of procedures to determine the amount of that adequate assurance, is requested. |

## V. MOTIONS TO BE FILED BUT NOT HEARD AT FIRST DAY HEARING

26.     The Debtors intend to seek relief from the Court at a hearing approximately twenty-five (25) days after the Petition date through each of the motions described below, all of which shall be filed shortly after the Petition Date:

| Title | Purpose of Motion |
|---|---|
| Application Authorizing Employment and Retention of Tarter Krinsky & Drogin LLP as Attorneys for the Debtors *Nunc Pro Tunc* to the Petition Date | To ensure the Debtors have general bankruptcy counsel. |
| Debtors' Motion for Entry of an Order Authorizing the Debtors to (i) Retain Getzler Henrich to Provide the Debtors with a Chief Restructuring Officer and Certain Additional Personnel, and (ii) Designate William Henrich as Chief Restructuring Officer for the Debtors *Nunc Pro Tunc* to the Petition Date | To ensure the Debtors have experienced financial advisors to shepard the Debtors through the sale process and otherwise assist the Debtors in filing schedules, statement of financial affairs, and preparation of DIP financing budget. |
| Motion Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals | Authorization to establish procedures providing for interim monthly compensation and reimbursement of retained professionals is requested. |

## VI. INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

27.    I have been advised that Local Bankruptcy Rule 1007-2 requires certain information related to the Debtors which is set forth below.

28.    In accordance with Local Bankruptcy Rule 1007-2(a)(3), there has been no prepetition committee of creditors formed in these chapter 11 cases.

29.    In accordance with Local Bankruptcy Rule 1007-2(a)(4), **Exhibit A** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the twenty (20) largest unsecured claims (excluding insiders) against the Debtors.

30.    In accordance with Local Bankruptcy Rule 1007-2(a)(5), **Exhibit B** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the five (5) largest secured claims against the Debtors.

31.    In accordance with Local Bankruptcy Rule 1007-2(a)(6), **Exhibit C** hereto is a list containing a summary of the Debtors' assets and liabilities.

32.     To the best of my knowledge, none of the Debtors' property is in the possession or control of any custodian, public officer, mortgagee, pledgee, assignee or rents, or secured creditor, or agent for any such entity.

33.     In accordance with Local Bankruptcy Rule 1007-2(a)(9), **Exhibit D** hereto is a list of the premises leased, or held under other arrangement, from which the Debtors operate their business.

34.     In accordance with Local Bankruptcy Rule 1007-2(a)(10), **Exhibit E** hereto is a list providing the location of the Debtors' substantial assets, the location of their books and records, and the value of any assets held by the Debtors outside the territorial limits of the United States.

35.     In accordance with Local Bankruptcy Rule 1007-2(a)(11), **Exhibit F** hereto is a list of litigation commenced against the Debtors.

36.     In accordance with Local Bankruptcy Rule 1007-2(a)(12), **Exhibit G** hereto is a list containing the names of the individuals who comprise the Debtors' existing senior management, with their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience. The Debtors intend to continue to operate and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

37.     In accordance with Local Bankruptcy Rule 1007-2(b)(1), **Exhibit H** hereto is the estimated amount of the payroll to employees of the Debtors (exclusive of officers, directors and stockholders) for the 30-day period following the commencement of the Debtors' chapter 11 cases.

38.     In accordance with Local Bankruptcy Rule 1007-2(b)(2)(A), **Exhibit I** hereto contains the amounts to be paid to the Debtors' officers, directors, and stockholders for services for the 30-day period following the commencement of the Debtors' chapter 11 cases.

39.    In accordance with Local Bankruptcy Rule 1007-2(b)(3), **Exhibit J** hereto contains the estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the 30-day period following the commencement of the Debtors' chapter 11 cases.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 14th day of January, 2016

s/ Barry King
Barry King

**EXHIBIT A**

**MRP, L.L.C.**
**LIST OF TWENTY (20) LARGEST UNSECURED CREDITORS**

| Fill in this information to identify the case: | | |
|---|---|---|
| Debtor name | MRP, L.L.C. | |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK | ☐ Check if this is an amended filing |
| Case number (if known): | | |

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Bushwick Metals Inc. 7601 Collection Center Drive Chicago, IL 60693 | 203-576-1800 | Trade | | | | $51,000.00 |
| Carboline Company 2150 Schuetz Road Saint Louis, MO 63146 | 800-848-4645 | Trade | | | | $12,257.98 |
| Certified Steel 1333 Brunswick Pike Suite 200 Lawrence Township, NJ 08648 | 609-396-7600 | Trade | | | | $220,000.00 |
| Chapel Steel Lockbox 4106 P.O. Box 8500 Philadelphia, PA 19178-4106 | 215-793-0899 | Trade | | | | $253,000.00 |
| CIGNA 910 Sylvan Avenue Englewood Cliffs, NJ 07632 | 201-227-6413 | Insurance | | | | $34,180.05 |
| Constellaltion NewEnergy 14217 Collections Center Dr. Chicago, IL 60693 | | Trade | | | | $15,436.13 |
| DCM Erectors Inc. 110 East 42nd St., Suite 1704 New York, NY 10017 | Larry Davis ld@dcmerectors.com | Loans | | | | $768,772.02 |
| Graphics for Steel Structures 70 East Old Country Road Hicksville, NY 11801 | 516-931-8282 | Engineering services | | | | $37,497.00 |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Debtor  **MRP, L.L.C.**                                          Case number *(if known)*
_____
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Harris Realty Company LLC 1640 New Market Avenue South Plainfield, NJ 07080 | **Marvin Strauss** 732-752-6070 | Rent | **Unliquidated** | | | $140,000.00 |
| Harris Structural Steel Fabri. 1640 New Market Ave. South Plainfield, NJ 07080 | **Marvin Strauss** 732-752-6070 | Trade | **Unliquidated** | | | $674,352.82 |
| New Jersey Manufacturer's 301 Sullivan Way Trenton, NJ 08628 | 800-690-6001 | Workers comp | **Unliquidated** | | | $124,751.10 |
| North East Gas Service 27 McDermott Place Bergenfield, NJ 07621 | 201-385-2244 | Trade | **Unliquidated** | | | $53,563.95 |
| PSE&G 615 Washington Street Hoboken, NJ 07030 | 800-350-7734 | Ulities | | | | $15,811.23 |
| Red-D-Arc Inc. 1513 South Washington Ave Piscataway, NJ 08854-3815 | | Trade | | | | $9,701.96 |
| SAS Stressteel, Inc. 100 New Dutch Ln Fairfield, NJ 07004 | 973-244-5995 | Trade | | | | $25,359.00 |
| T&P  Machine Company 600 Prospect Ave. Piscataway, NJ 08854 | 732-424-9141 | Trade | | | | $21,840.00 |
| Tri-State Employment Services 160 Broadway, 15th Floor Attn: John P. Messina, Sr. New York, NY 10038 | 212-346-7960 | Loan/payroll services | | | | $254,246.15 |
| United Steel Workers of Americ 2025 Lincoln Highway Suite 130 Edison, NJ 08817 | 412-562-2400 | Fringe benefits | | | | $10,868.56 |

Debtor  **MRP, L.L.C.**                    Case number *(if known)*
       Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Voortman Corporation 26200 South Whiting Way Monee, IL 60449 | 815-468-6300 | Trade | | | | $12,007.93 |
| Weinstock Brothers 140 East Mineola Avenue Valley Stream, NY 11580 | 516-568-2171 | Trade | | | | $11,993.76 |

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name **MRP, L.L.C.**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known)

☐ Check if this is an
amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ■ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **January 14, 2016**          X **/s/ Barry King**
Signature of individual signing on behalf of debtor

**Barry King**
Printed name

**Vice President**
Position or relationship to debtor

**EXHIBIT B**

**MRP, L.L.C.**
**LIST OF FIVE (5) LARGEST SECURED CREDITORS**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                              :
                                                    :        Chapter 11
MRP, L.L.C.,[1]                                     :
                                                    :        Case No.: 16-_____ (____)
                                  Debtor.           :
------------------------------------------------------------ x

## LIST OF CREDITORS HOLDING 5 LARGEST SECURED CLAIMS

*Following is a list of the debtor's creditors holding the 5 largest secured claims. The list is prepared in accordance with Rule 1007-2(a)(5) of the Local Rules of this court for the filing in this Chapter 11 case.*

| NAME OF CREDITORS AND COMPLETE MAILING ADDRESS (INCLUDING ZIP CODE) | NAME, TELEPHONE NUMBER AND COMPLETE MAILING ADDRESS (INCLUDING ZIP CODE) OF EMPLOYEE, AGENT, OR DEPARTMENT (IF DIFFERENT FROM MAILING ADDRESS) OF CREDITOR FAMILIAR WITH CLAIM | AMOUNT OF CLAIM | DESCRIPTION AND EST. VALUE OF COLLATERAL SECURING CLAIM |
|---|---|---|---|
| Banker Steel Co, LLC | 1619 Wythe Road, P.O. Box 10875 Lynchburg, VA 24506 | $2,000,000.00 | |
| | | | |
| | | | |

## DECLARATION UNDER PENALTY OF PERJURY

I, Barry King, the president of the debtor in this case, declare under penalty of perjury that I have read the foregoing list of creditors holding the five (5) largest secured claims and that it is true and correct to the best of my information and belief.

Dated:  New York, New York
        January 14, 2016

                                    s/ Barry King_____
                                    Barry King, President

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are NYC Constructors Inc. (7618) and MRP, LLC (0498).

**EXHIBIT C**

**MRP, L.L.C. BALANCE SHEET**
**(Internally Generated)**

**MRP, LLC**
**ESTIMATED BALANCE SHEET**
**AS OF DECEMBER 31, 2015**

**ASSETS**

| | |
|---|---|
| Cash | 126,958.29 |
| Accounts Receivable | 2,813,533.26 |
| Prepaid Expenses | 69,744.44 |
| Intercompany Receivables | 57,169.61 |
| Machinery, Net | 165,917.00 |
| Other Assets | 5,390.00 |
| | 3,238,712.60 |

**LIABILITIES AND OWNER'S EQUITY**

| | |
|---|---|
| Accounts Payable | 3,582,919.45 |
| Accrued Interest Payable | 52,922.24 |
| Taxes Payable | 74,042.38 |
| Other Liaibilities | 128,329.29 |
| Total Liabilties | 3,838,213.36 |
| | |
| Capital | 20,252.54 |
| Retained Earnings | 6,495,442.41 |
| | |
| Total Liabilities and Owner's Equity | 10,353,908.31 |

## EXHIBIT D

## MRP, L.L.C. LEASED PREMISES

| Leased Premises | Monthly Rent |
|---|---|
| 1640 New Market Ave, South Plainfield, NJ 07080 | $77,000.00 |
| 1205 Powderhorn Place, Piscataway, NJ 08854 | $1,905.00 |
| 218 Silverton Place, Piscataway, NJ 08854 | $1,945.00 |

# EXHIBIT E

## MRP, L.L.C.

| Location of Debtor's Substantial Assets |
| --- |
| 1640 New Market Ave, South Plainfield, NJ 07080 |

| Location of Debtor's Books and Records |
| --- |
| 1640 New Market Ave, South Plainfield, NJ 07080 |
| 15 Belfield Road, Suite 7, Toronto, Ontario M9W 1E8 |

**EXHIBIT F**

**MRP, L.L.C.**

**SIGNIFICANT LITIGATION COMMENCED AGAINST THE DEBTOR PRIOR TO THE PETITON DATE**

| Title of Action | Court | Nature of Action | Status |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| | | | |
| | | | |

# EXHIBIT G

## MRP, L.L.C.

### DEBTOR'S EXISTING SENIOR MANAGEMENT

| Name/Position | Summary of Responsibilities and Experience |
|---|---|
| David Floyd, President | Day to day management of the company, management of cash flows, budgeting, etc. |
| | |

**EXHIBIT H**

**MRP, L.L.C.**

**ESTIMATED AMOUNT OF WEEKLY PAYROLL TO EMPLOYEES EXCLUSIVE OF OFFICERS, DIRECTORS, AND SHAREHOLDERS FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE**

| Week Ending | Estimated Gross Payroll |
|---|---|
| 1/21/16 | $174,000.00 |
| 1/28/16 | $174,000.00 |
| 2/4/16 | $198,000.00 |
|  |  |

# EXHIBIT I

## MRP, L.L.C.

**ESTIMATED AMOUNT OF WEEKLY PAYROLL TO OFFICERS, DIRECTORS, AND
SHAREHOLDERS FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE**

| Week Ending | Estimated Gross Payroll |
|---|---|
| 1/21/16 | $3,500.00 |
| 1/28/16 | $3,500.00 |
| 2/4/16 | $3,500.00 |
| | |

# EXHIBIT J

## MRP, L.L.C.

**DEBTOR'S ESTIMATED CASH DISBURSEMENTS AND RECEIPTS FOR THE 30-DAY PERIOD FOLLOWING THE PETITION DATE**

| | |
|---|---|
| Cash Receipts | $1,100,000.00 |
| Cash Disbursements | $2,188,000.00 |
| Net Cash Gain (Loss) | ($1,088,000.00) [2] |
| Unpaid Obligations | N/A |
| Unpaid Receivables | $3,500,000.00 |

---

[2] To be funded by proposed DIP Loan.